UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Osama Allan,
    Petitioner,

vs.

Charles Zemski, Acting District Director
    Respondent.

NO: 1:-CV-00-1460
Judge Kane

FILED
HARRISBU

OCT 1 1 20

MARY E. D'ANDREA
Per_____
DEPUTY CL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Motion To Submit Additional Exhibit To Evidentiary Record

Respondent, Osama Allan, by and through Counsel, Sandra Greene, Esquire, moves this honorable court to permit his submission of the decision of the immigration judge as an exhibit in these proceedings. Although this court reviews the decision of the Board of Immigration Appeals rather than the decision of the Immigration Judge when considering the merits of the pending petition, the Board of Immigration Appeals relied heavily upon the decision of the immigration judge and the Petitioner wishes to submit it to the court. Counsel has only recently located the complete text of the decision of the immigratiion judge and for this reason was not able to submit the document previously. Inasmuch as the document is relevant to this court's consideration of the merits of this appeal, Petitioner requests that its admission into the evidentiary record in these proceedings be permitted.

Counsel attempted to contact Larry Selkowitz, Asst. US Attorney to determine whether the Respondent would object to the instant motion, but Counsel was unable to speak to him directly. Counsel left a message for Mr. Selkowitz requesting that he contact Counsel to discuss the Respondent's opposition or concurrence to the instant motion.

WHEREFORE, Petitioner requests that the instant motion be GRANTED.

Sincerely,

*Sandra Greene*

Sandra Greene, Esquire

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be Served upon Larry Selkowitz, Assistant US Attorney, a true and correct copy of this document by hand delivery on October 12, 2000 at 228 Walnut Street, 2nd Floor, Harrisburg, PA   17108.

Sincerely,

*Sandra Greene*

Sandra Greene, Esquire

Case 1:00-cv-01460-YK   Document 9   Filed 10/11/2000   Page 2 of 12

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Osama Allan,
    Petitioner,

vs.                                       NO: 1:-CV-00-1460
                                              Judge Kane

Charles Zemski, Acting District Director
    Respondent.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

O R D E R

AND NOW this _____ day of _____, 2000, in consideration of the instant motion, it is HEREBY ORDERED and DECREED that said motion is GRANTED.

BY THE COURT:

J.

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
Philadelphia, Pennsylvania

File No.:   A42-516-624                                         Date: August 4, 1999

**In the Matter of**

**ALLAN, Osama**                                 IN REMOVAL PROCEEDINGS


CHARGE:   Removable pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (the "INA"), as amended, in that, any time after admission, you have been convicted of an aggravated felony as defined in Section 101(a)(43) of the Act.

APPLICATIONS:   Withholding of removal pursuant to Section 241(b)(3) of the INA.

ON BEHALF OF RESPONDENTS:                ON BEHALF OF SERVICE:
Osama Allan, Pro Se                              Geraldine Richardson, Esquire
                                                 Assistant District Counsel
                                                 U.S. Immigration and Naturalization
                                                  Service
                                                 1600 Callowhill Street
                                                 Philadelphia, PA 19130


### DECISION OF THE IMMIGRATION JUDGE

**I       PROCEDURAL BACKGROUND**

On September 24, 1997, the Immigration and Naturalization Service ("the Service") served the respondent, Osama Allan, with a Notice to Appear, Form I-862, alleging that the Respondent: (1) is not a citizen or national of the United States; (2) was born in Jerusalem but is stateless; (3) was admitted to the United States at New York, New York on or about May 20, 1991; (4) was, on May 21, 1997, convicted in the United States District Court at the Eastern District of Pennsylvania for the

1

following offenses: Conspiracy, in violation of 18 U.S.C. 371; Copyright Infringement, Aiding and Abetting, in violation of 18 U.S.C 2319(b)(1) and 18 U.S.C. 2; Trafficking in Counterfeit Labels. Aiding and Abetting, in violation of 18 U.S.C. 2318(a)(c)(3) and 18 U.S.C. 2; Conspiracy to Launder Money, in violation of 18 U.S.C. 1956(h); Three counts of Money Laundering, Aiding and Abetting, in violation of 18 U.S.C. 1956(1)(A)(i) and 18 U.S.C. 2; and Three counts of Money Laundering, Aiding and Abetting, in violation of 18 U.S.C. 1957(a) and 18 U.S.C. 2. The Service charged that the Respondent was subject to removal from the United States pursuant to Section 237(a)(2)(A)(iii) of the Act, in that, at any time after admission, he has been convicted of an aggravated felony as defined in Section 101(a)(43) of the Act. The Respondent denied allegation number two and admitted all other allegations and conceded removability.

The initial Master Calender hearing was held on July 1, 1998, but continued six times. First, the Respondent was in the process of appealing his conviction and then needed more time to secure a lawyer. However, the Respondent did not agree with the lawyer that he retained and so he represented himself. An Individual Hearing was held on May 4, 1999, to determine whether the Respondent was eligible for withholding of removal or the Convention Against Torture.

The Respondent is not eligible for asylum because he has been convicted of an aggravated felony. *See* Sections 208(a), 240A(b), and 240A(3) of the Act. However, the Respondent's conviction for Conspiracy, Copyright Infringement, Trafficking in Counterfeit Labels, Conspiracy to Launder Money, and Money Laundering, do not qualify as particularly serious crimes and his sentence was for less than five years. *See* Section 241(b)(3)(B) of the Act. Thus, the Respondent is eligible for consideration of withholding of removal.

2

## II  Statutory Requirements for Withholding of Removal

Persecution is "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." Desir v. Ilchert, 840 F.2d. 723, 726-27 (9th Cir. 1988) (quoting Kovac v. INS, 407 F.2d 102, 107 (9th Cir. 1969). Persecution must be more than harassment, interrogation or economic disadvantage. Kubon v. INS, 913 F.2d 386 (7th Cir. 1990), *See also* Huang v. INS, 163 F.3d 606 (9th Cir. 1998). Persecutors must be the government or persons or organizations the government is unable or unwilling to control. McMullen v. INS, 658 F.2d 1312 (9th Cir. 1981). General harsh conditions or civil strife faced by many is not persecution. Matter of Sanchez and Escobar, Int. Dec. 2996 (BIA 1985). Fear of persecution must be country-wide. Matter of R-, Int. Dec. 3195 (BIA 1992).

An aggravated felon is barred from asylum, cancellation of removal, and voluntary departure. *See* Sections 208(a), 240A(b), and 240A(a)(3) of the Act. In regard to withholding of removal, an alien convicted of an aggravated felony and sentenced to an aggregate of at least five years imprisonment, is considered to have committed a particularly serious crime and is therefore barred from withholding of removal. *See* Section 241(b)(3)(B) of the Act.

To be eligible for withholding of removal, an alien must first establish that he or she is statutorily eligible pursuant to Section 241(b)(3). Withholding of removal requires an alien to establish by a clear probability that his or her life or freedom would be threatened in the proposed country of deportation. Id. *See* Toboso-Alfonso, *supra*; INS v. Stevic, 104 S.Ct. 2489 (1984). Clear probability means more likely than not that the alien would be subject to persecution based on membership in one or more of the enumerated protected groups. Id. Clear probability of persecution can be shown by demonstrating

3

that: (1) others similarly situated face a greater risk than the general population; (2) the threat faced is serious; (3) the state of mind of the persecutor. § 241(b) of the INA.

A grant of withholding of removal may be based on either past persecution or future persecution. <u>Matter of Chen</u>, Int. Dec. 3104 (BIA 1989). If the applicant is determined to have suffered persecution in the past such that his or her life or freedom was threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion, it shall be presumed that his or her life or freedom would be threatened on return to that country unless a preponderance of the evidence establishes that conditions in the country have changed to such an extent that it is no longer more likely than not that the applicant would be so persecuted there. 8 C.F.R. § 208.16(b)(2); <u>Prasada v. INS</u>, 83 F.3d 315 (9th Cir. 1996); <u>Matter of Chen</u>, Int. Dec. 3104 (BIA 1989).

Withholding is mandatory relief unless an exception applies. <u>Id.</u> See <u>Toboso-Alsonso</u>, *supra*. If the alien qualifies for it, he or she will be granted relief. The alien bears the burden of proof and the alien's testimony alone may be sufficient.

## III   Evidence Presented

On May 4, 1999, the court admitted the following exhibits into evidence: **Exhibit 1**– Notice to Appear, Form I-862; **Group Exhibit 2**– Application for asylum, Form I-589, and attachments; **Exhibit 3**– I-213, Record of Deportable Alien; **Exhibit 4**– Form I-261, Additional Charges of Removability; **Exhibit 5**– Governments submission including immigrant visa application and certificate of birth; **Exhibit 6**– Copy of Indictment; **Exhibit 7**– INS legal memo pertaining to charge of removability submitted February 1999; **Exhibit 8**– Form I-589 and attachments; **Exhibit 9**– Response

4

from State Department: copy of U.S. State Department Country Report on Human Rights Practices for Occupied Territories, 1998; **Exhibit 10**-- U.S. State Department Country Report on Human Rights Practices for Isreal and the Occupied Territories, 1997, and the U.S. State Department Country Report on Human Rights Practices for Jordan, 1997, submitted by the government; **Exhibit 11**-- Respondent's submission, three letters from his relatives; **Exhibit 12**-- the Respondent's statement entitled, Notice of Intent to Respond to INS Evidence.

In addition to the evidence presented, the Respondent testified on his own behalf. The Service called no witnesses.

The Respondent, representing himself, contends that if he is ordered to return to Palestine, the West bank of Israel, he will be subject to the violence of the Israeli soldiers because he is of the age, health, and mind of those men of his homeland who oppose the Israeli occupation. The Respondent contends that he will be the victim of violence and oppression regardless if he supports the Palestinian movement for independence or not because the soldiers will automatically assume that he supports the struggle given his age and health.

The Respondent testified that in the Summer of 1987, he was detained at a Israeli military checkpoint while on his way to a martial arts lesson in Jerusalem City. At the checkpoint, five to six soldiers stopped the Respondent and asked him to empty his bag. His picture of Bruce Lee fell out and the men stomped on it and said that they could stomp on him too. First, the soldiers asked the Respondent why he wanted to study martial arts and then stated that it was because he wanted to fight with the Jews. The respondent tried to tell them that he studied martial arts for himself and had been doing so for a long time, but they began to kick his legs with their boots which gashed open his skin.

5

After kicking him, they told him to pack up his bag and they let him go. He went to the karate school to tell his teacher what had happened.

In August of 1998, there was a big clash in his village. The Respondent was walking to visit some family members when four to five Israeli soldiers held him by force and beat him. After a little while, they left him. Later on that day, the Respondent saw a Palestinian man stone a Israeli car and the Israeli military men wanted the Respondent to show them who did it. The Respondent would not tell them and so they shot at the ground in front of him. The Respondent speaks Arabic and a little Hebrew so he could understand what the soldiers were saying to him.

## IV   Findings of the Court

The Court finds that the Respondent has not provided sufficient evidence to show that he warrants a grant of withholding of removal. The Respondent represented himself and testified on his own behalf. He provided an affidavit to support his application for withholding of removal and several letters written by family members on his behalf.

Withholding of removal requires a higher burden of proof than asylum. Sotelo-Aquije v. Slattery, 17 F.3d 33,38 (2nd Cir. 1994) (quoting Carranza-Hernandez, 12 F.3d at 7). Withholding of removal requires an alien to establish by a clear probability that his or her life or freedom would be threatened in the proposed country of deportation. Id. See Toboso-Alfonso, supra; INS v. Stevic, 104 S.Ct. 2489 (1984). Clear probability means more likely than not that the alien would be subject to persecution based on membership in one or more of the enumerated protected groups. Id.

The court found the Respondent to be credible. He described an incident with the Isreali military, in which he was forced to empty his bag at an Israeli military checkpoint and was then kicked

6

by the men. The Respondent also testified to being beaten up during a clash in the West Bank on the way to visit his family.

The U.S. Department of State Country Report of Human Rights Practices for the Occupied Territories, 1999, does paint a violent picture of the strife that has been ongoing between the Palestinians and the Israeli military that is occupying the West Bank. The Country Report indicates that the Isreali security forces in the West Bank have committed human rights abuses. The Country Report states that last year, nine Palestinians were killed in violent confrontations with Israeli security forces, who at times used live ammunition against Palestinian demonstrators and shot demonstrators indiscriminately. The Report also states that the Israeli security forces killed four Palestinians at military checkpoints and roadblocks inside the occupied territories. Further, during the year, a violent clash between Palestinian demonstrators and Israeli security forces resulted in sixteen Palestinian deaths and scores of wounded. Israeli police and soldiers also used live ammunition or rubber-coated metal bullets, which can be lethal, in situations other then when their lives were in danger and sometimes shot suspects in the upper body and head. During the year, Israeli soldiers shot in the head and killed, with rubber-coated metal bullets, three Palestinians under the age of 18. Further, Isreali authorities arbitrarily arrest and detain persons.

However, the court does not find that the incidents experienced by the Respondent, in the aggregate, amount to persecution. In comparison to the State Department Country Report, the incidents suffered by the Respondent are not nearly severe as the incidents detailed in the Report. The Respondent did not testify to being in a revolutionary or terrorist group, nor politically involved in opposing the Isreali military occupation. Nor did he ever testify to participating in any clashes between

7

demonstrators and the Isreali military. The Respondent merely testified that on one occasion, while walking to his family's home during a clash, he was stopped and briefly assaulted and then let go.

It would be unreasonable to say that the Respondent had been persecuted because he has not established any reason for which the Israeli security forces would seek to do so. While the U.S. Department of State Country Report does indicate that there is a pattern of persecution perpetrated by the Israeli military against the Palestinians living in the West Bank, not every young Palestinian man of good health is arbitrarily assaulted or automatically assumed to be part of the Palestinian resistance. The Respondent may have encountered some problems while residing in the West Bank, but there is no reason to believe that if he were ordered to return to the West Bank, the Israeli military would seek to persecute him individually. For the above reasons, the court finds that there is no evidence to support that the Respondent is more likely than not to be persecuted, if ordered to return to the West Bank of Isreal.

## V    Conclusion

The court finds that the Respondent has not provided sufficient evidence to support a finding of past persecution based upon a protected ground. The court also finds that there is no evidence that suggests that the Respondent will more likely than not suffer future persecution based on being a Palestinian in the Israeli occupied West Bank.

8

## ORDER OF THE COURT

WHEREFORE, IT IS ORDERED that the application for withholding of removal under Section 241(b)(3) of the Immigration and Nationality Act, of the Respondent, Osama ALLAN, is DENIED.

For the same reasons, the court finds that the Respondent does not qualify under the convention against torture. *See* Section 208.16(c)(1).

August 4, 1999

PAUL GRUSSENDORF
Immigration Judge

9