NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

02-4165
_____

OSAMA ALLAN,

Appellant

v.

*JOHN ASHCROFT, U.S. Attorney General;
CHARLES ZEMSKI, Acting District Director,
Immigration and Naturalization Service,
Philadelphia District

*Pursuant to F.R.A.P 43(c)

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
_____

(D.C. Civ. No. 00-cv-01460)
District Judge:  The Honorable Yvette Kane

Submitted Under Third Circuit Rule 34.1(a)

July 23, 2003

Before: ALITO, FUENTES, and BECKER, <u>Circuit</u> <u>Judges</u>

(Filed:   June 9, 2004)

_____

_____

OPINION

_____

PER CURIAM:

Osama Mahmoud Allan ("Allan") appeals an order of the District Court denying his petition for habeas corpus pursuant to 28 U.S.C. § 2241.  For the reasons stated below, we affirm.

## I.

A. <u>Allan's conviction and the INS's notice to appear</u>

Allan is a native of the West Bank of Israel.  Allan was admitted to the United States on May 20, 1991.  On May 21, 1997, Allan was convicted in the United States District Court for the Eastern District of Pennsylvania of (1) criminal conspiracy in violation of 18 U.S.C. § 371; (2) copyright infringement in violation of 18 U.S.C. § 2319(b)(1); (3) trafficking in counterfeit labels in violation of 18 U.S.C. § 2318(a)(c)(3); (4) conspiring to launder money in violation of 18 U.S.C. § 1956(h); (5) three counts of money laundering in violation of 18 U.S.C. § 1956(1)(A)(i); and (6) three counts of money laundering in violation of 18 U.S.C. § 1957(a).  App. at 27.

On September 24, 1997, the Immigration and Naturalization Service ("INS") served Allan with a notice to appear, alleging that he was subject to removal as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii).  A hearing ensued before an Immigration Judge ("IJ") of the INS.  At the hearing, Allan conceded that he was an

aggravated felon under Section 1227(a)(2)(A)(iii), but maintained that he was entitled to

(1) withholding of removal pursuant to 8 U.S.C. § 1232(b)(3)(A) and (2) withholding or

deferral of removal pursuant to the Convention Against Torture.  In his petition for

withholding and deferral of removal, Allan averred that "[a]s a Palestinean [sic], if I

return to my homeland, I believe that I will be subject to the violence of Israeli soldiers,

because I am of the age, health, and mind of those men from my homeland who bring

opposition againts [sic] our oppressors."  <u>Id.</u> at 23.

B.  <u>The IJ's decision</u>

1.  To put the IJ's decision in context, we briefly discuss the relevant statutory

framework.  To successfully petition for withholding or deferral of removal under Section

1231(b)(3)(A), an alien must "show that if returned to his country, it is more likely than

not that the alien's life or freedom would be threatened on account of race, religion,

nationality, membership in a particular social group, or political opinion."  <u>Amanfi v.

Ashcroft</u>, 328 F.3d 719, 726 (3d Cir. 2003); <u>see also</u> 8 U.S.C. § 1231(b)(3)(A) ("[T]he

Attorney General may not remove an alien to a country if the Attorney General decides

that the alien's life or freedom would be threatened in that country because of the alien's

race, religion, nationality, membership in a particular social group, or political opinion.").

To obtain deferral of removal pursuant to the Convention, the alien must "establish

that it is more likely than not that he or she would be tortured if removed to the proposed

country of removal."  8 C.F.R. § 208.16(c)(2).  "Torture" is defined as "any act by which

severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

2. The IJ rendered a decision denying Allan's request for withholding of removal on August 4, 1999. According to the IJ's summary of Allan's testimony at the hearing, Allan described two encounters with Israeli soldiers while living in the West Bank. With respect to the first event, the IJ wrote:

> [I]n the Summer of 1987, [Allan] was detained at a [sic] Israeli military checkpoint while on his way to a martial arts lesson in Jerusalem City. At the checkpoint, five to six soldiers stopped [Allan] . . . and asked him to empty his bag. His picture of Bruce Lee fell out and the men stomped on it and said that they could stomp on him too. First, the soldiers asked [Allan] . . . why he wanted to study martial arts and then stated that it was because he wanted to fight with the Jews. [Allan] . . . tried to tell them that he studies martial arts for himself and had been doing so for a long time, but they began to kick his legs with their boots which gashed open his skin. After kicking him, they told him to pack up his bag and they let him go.

App. at 12-13. The second incident was recounted in these terms:

> In August of 1998,[1] there was a big clash in [Allan's] village. [Allan] . . . was walking to visit some family members when four to five Israeli soldiers held him

---

[1] We assume that the IJ meant 1988, not 1998, because Allan allegedly last went to Israel in 1992. App. at 18.

by force and beat him.  After a little while, they left him.  Later on that day, [Allan] . . . saw a Palestinian man stone a [sic] Israeli car and the Israeli military men wanted [Allan] . . . to show them who did it.  [Allan] . . . would not tell them and so they shot at the ground in front of him.

Id. at 13.

While the IJ found Allan's testimony credible, the IJ found that Allan did "not provide[] sufficient evidence to show that he warrant[ed] a grant of withholding of removal" under Section 1232(b)(3)(A).  Id.  This was because "the incidents experienced by" Allan did not, "in the aggregate, amount to persecution."  Id. at 14.  The IJ wrote:

> [Allan]did not testify to being in a revolutionary or terrorist group, nor politically involved in opposing the [Israeli] military occupation.  Nor did he ever testify to participating in any clashes between demonstrators and the [Israeli] military.  [Allan] . . . merely testified that on one occasion, while walking to his family's home during a clash, he was stopped and briefly assaulted and then let go.

> It would be unreasonable to say that [Allan] . . . had been persecuted because he has not established any reason for which the Israeli security forces would seek to do so.  While the . . . Country Report does indicate that there is a pattern of persecution perpetrated by the Israeli military against the Palestinians living in the West Bank, not every young Palestinian man of good health is arbitrarily assaulted or automatically assumed to be part of the Palestinian resistance.  [Allan] . . . may have encountered some problems while residing in the West Bank, but there is no reason to believe that if he were ordered to return to the West Bank, the Israeli military would seek to persecute him individually.

Id. at 14-15.  "For the same reasons," the IJ found that Allan did "not qualify under the convention against torture."  Id. at 16.  Allan timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA").

C. The BIA's decision

The BIA affirmed the IJ's decision. In its opinion, the BIA summarized the incidents described in Allan's testimony and deferred to the IJ's finding that Allan's testimony was credible. Id. at 7. The BIA found that the incident in which Allan was allegedly kicked by Israeli soldiers "did not rise to the level of persecution." Id. As to the incident in which Israeli soldiers allegedly beat Allan and shot at his feet, the BIA found "no evidence that this incident was motivated by a statutorily protected ground," observing that it came "on the heels of a physical altercation between the police and villagers." Id. Since "[t]here [was] no indication in this record that such an incident will occur again," the BIA saw "no evidence that [Allan] . . . is more likely than not going to face either persecution or torture if removed to Israel." Id. The BIA thus rejected Allan's claim for relief under Section 1231(b)(3)(A). The BIA "likewise[] reject[ed] [Allan's] . . . assertions that he is entitled to deferral of removal pursuant to Article 3 of the Torture Convention."

Allan subsequently filed both a direct appeal of the BIA's decision in this court pursuant to 8 U.S.C. § 1252(g) and a petition for a writ of habeas corpus in the District Court under 28 U.S.C. § 2241. We remanded the petition for review to the District Court with instructions to treat Allan's appeal as a Section 2241 petition. Id. at 29. The District Court transferred Allan's initial petition for habeas corpus to this court, id. at 28(a), and we remanded the petition for lack of jurisdiction. Id. at 31. The District Court thereupon

consolidated both Allan's petition for review and his habeas petition into a single petition for relief under Section 2241. Before the District Court did so, Allan was removed from the United States on April 6, 2001.[2]

D. The District Court's decision

In his habeas petition, Allan argued that the BIA's treatment of his claim for withholding of removal denied him due process. Allan based this contention on four grounds: (1) that "the BIA failed to adequately consider his assertion that he feared persecution and/or torture in the future and instead focused only on his past experiences"; (2) that the BIA "ignored a Report on Human Rights from the U.S. Department of State and, therefore, considered the facts in a vacuum"; (3) that the BIA "focused on the extent of his past harm rather than the cause of that harm"; and (4) that the BIA "failed to provide independent reasoning for the denial of his [Convention] claim." Id. at 4.

On September 11, 2002, the District Court signed an order denying Allan's habeas petition, and this order was filed on the following day. The District Court rejected the first three of the above arguments on the ground that the court "could not find that the BIA ignored the evidence presented by [Allan]. The weight given to evidence is discretionary. There Court here [sic] finds there was no abuse of discretion by the BIA."

---

[2]Although Allan has been removed, our court has held that, since the INA prohibits removed aliens from applying for readmission within ten years of their removal, aliens who have already been removed suffer sufficient collateral consequences to permit them to file an action seeking to invalidate their removal orders. Moi Chong v. Dist. Dir. INS, 264 F.3d 378, 385 (3d Cir. 2001).

Id. at 5.  As to Allan's contention that the BIA did not explain why it rejected the Convention claim, the District Court held that the BIA's findings concerning Allan's claim for relief under Section 1231(b)(3)(A) "are equally applicable to [Allan's Convention] claim, and the BIA thus applied its findings."  Id.  Accordingly, the BIA did not violate Allan's right to due process.

On September 12, 2002, Allan filed a timely notice of appeal.

E. Issues on appeal

On appeal, Allan makes four contentions.  First, he maintains that the District Court "erred in determining that the [BIA] had the discretionary authority to dismiss . . . [his] claims under the withholding of removal statute and the provisions of the . . . Convention."  Brief for Appellant at 11.  Second, he argues that since the standards for determining whether an alien is eligible for withholding of removal under Section 1231(b)(3)(A) and deferral of removal under the Convention differ, the District Court erred by holding that the BIA's findings regarding the former claim were sufficient to support its conclusion regarding the latter.  Third, Allan contends that the BIA denied him due process by making two errors: (1) failing to explain why it concluded that he was not persecuted within the meaning of Section 1231(b)(3)(A) in either of the incidents he described; and (2) failing to explain why the treatment he received in those incidents did not constitute torture under the Convention.  Finally, Allan avers that the District Court's act of signing the order denying his habeas petition on September 11, 2002, coupled with

the fact that Allan's first name is Osama, demonstrated that the District Court was biased against him.

The government raised two additional issues concerning Allan's Convention Against Torture (CAT) claim.  First, the government maintained that the District Court lacked subject matter jurisdiction over the CAT claim under 28 U.S.C. § 2241 because Congress never afforded district courts jurisdiction to hear claims under the Convention on habeas review.  Second, the government argued that the District Court lacked jurisdiction to entertain Allan's Convention arguments because they only allege factual and not legal error.

The two issues raised by the government were raised in other litigation in our court, and we therefore held this appeal CAV.  In Ogbudimkpa v. Ashcroft, 342 F.3d 207 (3d Cir. 2003), our court held that a habeas court has jurisdiction to entertain a CAT claim, and in Bakhtriger v. Elweed, 360 F.3d 414 (3d Cir. 2004), it was held that habeas review of immigration decisions is limited to questions of constitutional and statutory law and does not permit review of the exercise of administrative discretion or the sufficiency of evidence.

## II.

Allan, as noted above, makes four contentions on appeal.  Allan first contends that the District Court erred in taking the view that the BIA had absolute discretion to determine whether to grant him withholding of removal pursuant to Section

1232(b)(3)(A).  This argument is not barred by <u>Bakhtriger</u>.

Second, Allan avers that the BIA denied him due process by failing to explain why the incidents he described did not rise to the level of persecution, and why Allan was not persecuted on a protected ground.  This claim does not question the factual findings of the BIA, but rather the completeness of its enumeration of the reasons for its findings.  Our precedents indicate that this sort of argument raises a question of law.  In <u>Moi Chong v. Dist. Dir. INS</u>, 264 F.3d 378 (3d Cir. 2001), the petitioner contended that the BIA erred by failing to "look[] at the specific facts of [the petitioner's] case – [<u>i.e.</u>, to] engag[e] in [an] 'individualized determination' . . . [– thus] blindly following a categorical rule." <u>Id.</u> at 387.  Accordingly, the petitioner argued that the BIA erred by failing to engage in an on-the-record consideration of her circumstances.  We stated that our review of the BIA's decision was "de novo," therefore suggesting that the petitioner's argument presented a question of law rather than one of fact.  Had the petitioner's argument presented a question of fact, the appropriate standard of review would have been "substantial evidence."  <u>See</u> <u>Gao v. Ashcroft</u>, 299 F.3d 266, 272 (3d Cir. 2002).  Allan similarly alleges that the BIA failed to make an on-the-record determination of whether he was entitled to relief under 8 U.S.C. § 1232(b)(3)(A) or the Convention, because it failed to explain why it did not view the evidence Allan presented as sufficient to meet his burden.  Allan's claim accordingly raises a "pure question of law" and is not barred by <u>Bakhtriger</u>.

Third, Allan argues that the BIA erred by failing to explain why the incidents he

described did not constitute torture.  This claim similarly alleges that the BIA failed to

explain on the record why he failed to prove that he was entitled to relief, and hence it

presents a question of law.

Finally, Allan avers that the District Court evinced bias against him by signing the

order denying his habeas petition on September 11, 2002, and therefore denied him due

process.  This argument does not involve review of an administrative decision and thus is

not subject to <u>Bakhtriger</u>.  We now turn to the merits of Allan's arguments.

## II.

A.  <u>Standard of Review Applied by District Court</u>

Allan first maintains that the District Court labored under the erroneous belief that

it could only review the BIA's decision for abuse of discretion.  In this connection, Allan

cites several statements made by the District Court.  <u>See</u> App. at 3, 5.  However, even

assuming that the District Court applied an incorrect standard of review, the error is

inconsequential because we exercise plenary review over the District Court's conclusions

of law in its denial of the habeas petition.  <u>See</u> <u>Young v. Vaughn</u>, 83 F.3d 72, 75 (3d Cir.

1995).

B.  <u>BIA's Treatment of Persecution Claims</u>

We now consider Allan's due process arguments regarding his claims of

prosecution.  Allan first maintains that the BIA denied him due process by failing to

"explain its basis for its conclusion that the first incident [in which Israeli soldiers

-11-

detained him, stomped on his picture of Bruce Lee, and kicked him in the shins] did not [rise] to the level of persecution or why the evidence submitted was insufficient." Brief for Appellant at 17.

It is well established that "[a] decisionmaker must 'actually consider the evidence and argument that a party presents'" for that body's procedures to comport with due process. Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) (quoting Llana-Castellon v. INS, 16 F.3d 1093, 1096 (10th Cir. 1994)). In Abdulai, the alien contended that he was likely to be persecuted upon his return to Nigeria because he was a member of an opposition political party. We found that the BIA met this requirement by specifically noting that the IJ had determined that the alien had failed to submit evidence showing that he was a member of a political party. Id. at 550 ("From [the BIA's] statements, one can deduce that the BIA was aware that Abdulai was a Nigerian seeking asylum on the basis of political persecution, that there had been issues involving a change in the Nigerian government and his failure to document his membership in a political party, and that the IJ's decision evinced dissatisfaction with his meeting the requisite burden of proof. This is sufficient [to comport with the 'on-the-record review' requirement of due process].").

In applying Abdulai in this case, we must keep in mind the nature of the question before the BIA. "Persecution" includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). While the concept of "persecution" for these

purposes may not be limited to these specifically enumerated actions, the concept

"denotes extreme conduct" and "does not encompass all treatment that our society regards

as unfair, unjust, or even unlawful or unconstitutional." Id. at 1240 & n.10.

The crux of Allan's argument regarding the incident in question was whether the

conduct of the Israeli soldiers – in detaining him, emptying his bag, stomping on his

Bruce Lee picture, and kicking him in the shins – rose to the high level needed to amount

to persecution.  This was a simple, line-drawing question, and although the BIA did no

more than state in conclusory fashion that this incident did not "rise to the level of

persecution," due process did not require more under the circumstances.  Abdulai

demands that the BIA consider an alien's claim and the supporting evidence; it does not

require that the BIA expound in detail on simple determinations.

We similarly hold that the BIA did not violate due process in its treatment of the

second, more serious incident, in which Israeli soldiers allegedly shot at Allan's feet.  As

to this incident, the BIA offered the following analysis: "Coming on the heels of a

physical altercation between the police and villagers, we find no evidence that this

incident was motivated by a statutorily protected ground."  App. at 7.  This discussion

was sufficient to meet the on-the-record review requirement enunciated in Abdulai, as it

provided a reason for the BIA's rejection of the notion that the second incident amounted

to persecution or indicated a likelihood of future persecution – i.e., that it was likely that

the police were simply accosting villagers, such as Allan, after the violent confrontation

that occurred without regard to their "race, religion, nationality, membership in a

particular social group, or political opinion."

C. BIA's Conclusions Concerning CAT Claim

Allan next argues that the BIA denied him due process by failing to explain why

neither of the incidents he described amounted to torture under the CAT.  As noted above,

the BIA's discussion of Allan's CAT claim consisted only of the statement that "[w]e,

likewise, reject [Allan's] . . . assertions that he is entitled to deferral of removal pursuant

to Article 3 of the Torture Convention."  App. at 7.  The question here is therefore

whether the BIA's discussion of Allan's 8 U.S.C. § 1232(b)(3)(A) claim was sufficient to

support its rejection of his CAT claim.  We hold that it was.

As to the first incident, we determined above that the BIA's discussion of that

event afforded Allan the individualized review required by the Due Process Clause.  In

the context of the present case, the question whether the conduct of the Israeli soldiers

rose to the level of persecution was closely related to the question whether that conduct

amounted to "torture," which, as noted, requires an "act by which severe pain or

suffering, whether physical or mental, is intentionally inflicted on a person."  Under the

circumstances here, the BIA did not violate due process by implicitly relying on its

determination regarding persecution as controlling with regard to the CAT issue as well.

As to the second incident, the BIA found that Allan failed to prove that incidents

such as the one in which the Israeli soldiers shot at his feet were more likely than not to

-14-

occur again.  See App. at 7.  The Convention's implementing regulations require a

petitioner under the Convention to show that it is more likely than not that he will be

subjected to torture upon returning to his country of origin.  See 8 C.F.R. § 208.16(c)(2).

Since the BIA found that incidents such as the second one were unlikely to occur again,

and the second incident formed the basis for Allan's argument that he was more likely

than not to be tortured upon his return, the BIA's findings concerning the second incident

were sufficient to dispose of Allan's Convention claim.

### III. The District Court's Alleged Bias

Allan finally argues that the District Court violated his right to procedural due

process by harboring "hostility toward [Allan] . . . due to his name and ethnicity."  Brief

for Appellant at 20.  Allan bases this argument on the following facts: (1) his first name is

Osama and (2) the District Court signed the order denying his habeas petition on

September 11, 2002.

"[I]t is well established that 'due process demands impartiality on the part of those

who function in judicial or quasi-judicial capacities.'"  Abdulrahman, 2003 U.S. App.

LEXIS 10353, at *18 (quoting Schweiker v. McClure, 456 U.S. 188, 195 (1982)).

Gutierrez-Chavez v. INS, 298 F.3d 824 (9th Cir. 2002), is one of the few cases with facts

comparable to this situation.  In Gutierrez-Chavez, an IJ, in denying an alien's application

for an 8 U.S.C. § 1182(c) waiver of removal, remarked that the alien's "deportation to

Colombia would not cause great hardship because all his family members were from

Colombia and were still primarily Spanish speakers." <u>Gutierrez-Chavez</u>, 298 F.3d at 826. The alien argued, based on this statement, that the IJ was biased against him because he was from Cali, Colombia, a place commonly associated with drug trafficking. The Ninth Circuit rejected this claim, stating that "the IJ's remarks taken in context reflected no bias." <u>Id.</u> at 830.

If the rejection of the alien's bias claim was warranted in <u>Gutierrez-Chavez</u>, where the IJ openly considered the alien's Colombian origin in weighing the equities associated with determining whether he was entitled to a waiver of removal, surely it is warranted here. The District Court, in the instant case, did not discuss Allan's name, the fact that he is a Muslim, or the significance of the date on which the court signed the order denying Allan's petition. Accordingly, Allan's argument that the District Court was biased against him is without merit and, indeed, frivolous.

## IV.

For the reasons explained above, the order of the District Court is affirmed.